UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAUREEN BRESNAHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-1974 |
| | ) | |
| CITY OF CHICAGO, a municipal corporation, and SGT. JAMES EGAN, in his individual capacity, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| *And* | ) | |
| | ) | |
| ALLISON SCHLOSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-1880 |
| | ) | |
| CITY OF CHICAGO, a municipal corporation, and DEPUTY CHIEF STEVE E. GEORGAS, SGT. FREDERICK HARNISH, SGT. KAROLY HADJU, ANGEL ROMERO, and ROBERT FITZSIMMONS, in their individual capacities, | ) ) ) ) ) ) ) ) | Judge Thomas M. Durkin |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Allison Schloss and Maureen Bresnahan brought two separate actions both alleging sex discrimination against the City of Chicago and various City of Chicago Police Department ("CPD") employees. Plaintiffs challenge the CPD's alleged pattern and practice of sex discrimination against women applying for

promotion to and employed in prestigious units within the CPD. *Schloss v. City of Chicago et al.*, No. 18-cv-1880 ("*Schloss*"), R. 16 ¶ 2; *Bresnahan v. City of Chicago et al.*, No. 18-cv-1974 ("*Bresnahan*"), R. 15 ¶ 2.

Schloss brings her action against defendants City of Chicago and CPD current and former employees Steve Georgas, Frederick Harnish, Karoly Hadju, Angel Romero, and Robert Fitzsimmons in their individual capacities (collectively, the "Schloss defendants"). Schloss brings the following claims: sex discrimination in violation of Title VII of the Civil Rights Act of 1964 against the City of Chicago (Counts I, II, and III); the Equal Protection Act under 42 U.S.C. § 1983 against the City of Chicago ("*Monell* claim") (Count IV); the Equal Protection Act against defendant Georgas (Count V); the Equal Protection Act as a result of a civil conspiracy by the individual defendants (Count VI); the Illinois Civil Rights Act against the City of Chicago (Count VII); and the Illinois Whistleblower Act against the City of Chicago (Count VIII).

Bresnahan brings her action against defendants City of Chicago and CPD employee James Egan in his individual capacity (collectively the "Bresnahan defendants"). Bresnahan alleges sex discrimination in violation of Title VII against the City of Chicago (Count I); violation of the Equal Protection Act against the City of Chicago ("*Monell* claim") (Count II); violation of the Equal Protection Act against defendant Egan (Count III); and violation of the Illinois Civil Rights Act against the City of Chicago (Count IV).

The defendants in both cases have filed motions to dismiss. Specifically, the Schloss defendants have moved to dismiss Counts IV, VI, and VIII of Schloss's amended complaint.[1] *Schloss*, R. 20. The Bresnahan defendants have moved to dismiss Counts II and IV of Bresnahan's complaint. *Bresnahan*, R. 31. Plaintiffs filed a consolidated response in opposition to the motions to dismiss. Because many of the facts and issues overlap, the Court will address both motions to dismiss in this opinion. For the reasons explained below, both motions are denied.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual

---

[1] The defendants originally moved to dismiss Count V as well, but withdrew that motion during reply. *See* R. 45 at 1 n.1.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## BACKGROUND

### A. Allison Schloss

Lieutenant Allison Schloss has been a CPD officer since March 1990. *Schloss*, R. 16 ¶ 27. In May 2014, Schloss was promoted to commanding officer of the Marine and Helicopter Units of the CPD Special Functions Division. *Id*. ¶ 4. She alleges she was the first, and only, female commanding offer of the units. *Id*. ¶ 37. The Marine and Helicopter Units are located within the Special Functions Division of the CPD. That division includes the Marine and Helicopter Units, the Bomb Squad, the Special Weapons and Tactics ("SWAT") Team, and other high-profile operations. *Id*. ¶ 5.

Schloss alleges a history of harassment and discrimination against women by Steve Georgas, Deputy Chief of the Special Functions Division. *Id*. Schloss explains that under Georgas's command, the number of women employed in the division was abysmal, consisting of no more than ten women in the entire division of about 175 people. *Id*. ¶¶ 6-7. Georgas's gender discrimination affected Schloss on a day to day basis as well. Georgas constantly blamed Schloss for problems that were outside of her control, demanded she write (and unnecessarily re-write) reports explaining alleged faults or problems outside the scope of her responsibility, denied her approval

4

to attend training that he approved for male officers, undermined her authority with her subordinates, and disciplined her for following CPD policy. *Id*. ¶¶ 40-54.

In May 2016, Georgas's discrimination reached its peak. Schloss alleges that around May 9, 2016, she presented to Captain Marianovich her projections for the number of officers needed in the Marine and Helicopter Units to adequately staff the 2016 boating season. *Id*. ¶ 55. Those projections reflected that the units did not have a sufficient number of trained officers in the event of an emergency. *Id*. Despite these numbers, Schloss was not given any additional resources and was told not to allow officers to work overtime.

On the Sunday of Memorial Day Weekend, a boater was reported missing. *Id*. ¶ 59. Schloss was not scheduled to be on duty that weekend, but Schloss responded to the report and took charge of the search regardless. *Id*. Unfortunately, the boater drowned. *Id*. Following the incident, on May 31, 2016, Georgas removed Schloss from her command of the Marine Unit, citing the drowning as the purported basis for his action. *Id*. ¶ 61. Georgas did not discipline the male sergeant who was on duty when the boater drowned. *Id*.

On June 7, 2016, Schloss filed an internal workplace discrimination complaint with the Office of Legal Affairs, claiming that she had been subjected to unlawful sex discrimination by Georgas through her removal. *Id*. ¶ 65. The same day that Schloss filed an internal complaint, she alleges that Georgas conducted a meeting of Marine Unit supervisors, which included individual defendants Fitzsimmons, Harnish, Romero, and Hadju. *Id*. ¶ 66. Schloss alleges that in that meeting, the defendants

5

conspired to file a sexual harassment complaint against her. *Id.* ¶ 68. Following the meeting on June 7, 2016, Fitzsimmons, Harnish, Romero, and Hadju filed a sexual harassment complaint against Schloss, alleging that she touched an officer's arm without his consent. *Id.* ¶ 70. On June 8, 2016, Schloss was formally removed from her command of the Helicopter Unit and transferred to the Major Accident Investigation Unit. *Id.* ¶ 72.

### B. Maureen Bresnahan

Maureen Bresnahan is a detective for the CPD. *Bresnahan,* R. 15 ¶ 4. In February 2015, she applied for a promotion to the position of Explosives Technician I on the Bomb Squad. *Id.* The Bomb Squad is one of the prestigious units in the Special Functions Division. When Bresnahan applied for the promotion, Georgas oversaw the Special Functions Division as deputy chief. *Id.* ¶ 5.

During the application process, Bresnahan obtained the top score along with two male candidates on the written MultiCraft Aptitude Test. *Id.* ¶ 9. This test was used to evaluate a candidate's mechanical and electrical aptitude. *Id.* Ex. A. Sgt. James Egan, the commanding officer of the Bomb Squad and its hiring manager, described the other two top candidates as follows. The first, Candidate 53, was assigned to News Affairs. His "typical day at work" involved "coffee, news clips, [and] media inquiries." *Id.* ¶ 13, Ex. B at 1. Candidate 53 had not worked on the street since 2009. *Id.* Notably, in response to a question asking him about his ability to make quick decisions, Candidate 53 described his arrest for domestic violence. *Id.* ¶ 14.

6

The other top candidate, Candidate 62, had "little experience" but had done his "homework." *Id.* ¶ 17. Egan noted he "demonstrates some of the competency" on the Department Procedures and Scenario portion of the interview. *Id.* Egan thought Candidate 62's description of the role of an Explosives Technician I was "OK." *Id.* At the conclusion of the selection process, both candidates were placed on the Explosives Technician I promotions list. *Id.*

Bresnahan received more points on the Department Procedures and Scenario portion than Candidate 62. *Id.* ¶ 18. The interviewers noted she "clearly demonstrate[d] competency" on the Scenario. *Id.* Bresnahan also received higher scores than a third candidate, Candidate 93, who was also placed on the promotions list. *Id.* ¶ 19. Bresnahan was not placed on the promotions list. The notes from the deciding meeting stated that Bresnahan was rejected for the promotion because she was "[b]est suited for clerical, office [work]." *Id.* ¶ 12,

Defendants now seek to dismiss counts of both Schloss and Bresnahan's complaints. The defendants argue that the *Monell* claims against the City of Chicago of both complaints must be dismissed because Plaintiffs failed to allege a policy, practice, or custom in the CPD. The Schloss defendants also seek to dismiss Schloss's Equal Protection Act conspiracy claim and her Illinois Whistleblower Act claim. Along with the *Monell* claim, the Bresnahan defendants also seek to dismiss Bresnahan's Illinois Civil Rights Act claim. The Court will address each claim in turn.

7

## DISCUSSION

### I.  *Monell* Claims (Schloss Count IV; Bresnahan Count II)

Defendants first argue that both Plaintiffs' *Monell* claims fail because they do not allege a sufficient number of incidents to establish a widespread practice by the CPD. A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Monell v. Department of Social Services of the City of N.Y.*, 436 U.S. 658, 694. But a local government may be liable for a § 1983 claim if a policy upheld by the entity caused the alleged violation. Plaintiffs may demonstrate the existence of a municipal policy through proof of an express policy causing the loss, a widespread practice constituting custom or usage causing the loss, or causation of the loss by a person with final policymaking authority. *Kujawski v. Bd. of Comm'rs*, 183 F.3d 734, 737 (7th Cir. 1999). At the pleading stage, a plaintiff must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom. *See McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 683).

Defendants argue that each Plaintiffs' allegations of her own treatment and the treatment of her co-plaintiff are merely isolated incidents insufficient to allege a widespread practice. In making this argument, defendants ignore Plaintiffs' reliance on statistical analyses showing a poor showing of female representation in Special Functions units and allegations of hostility towards women in the Special Functions Division that are so pervasive that they establish an intent to discriminate. Specifically, Plaintiffs cite to the low number of women employed in various divisions

8

of the CPD Special Functions Division in March 2016 and March 2018 as evidence of CPD's policy of discrimination against women. *See Schloss*, R. 16 ¶¶ 6-7.[2] Plaintiffs then point to a series of factual allegations related directly to CPD's alleged custom, pattern, and practice of sex discrimination in the Special Functions Division. *Schloss*, R. 16 ¶¶ 77-80.[3] For example, Plaintiffs allege (a) women have been historically and continue to be excluded not just from "line" positions in Special Functions but also from command positions (for example, Schloss was the first and only woman to ever command the Marine and Helicopter Units); (b) the use of sexually biased procedures, such as non-blinded oral interviews, for promotions to the Bomb Squad and other positions in Special Functions (such as the interviews used to exclude Bresnahan); (c) reliance upon subjective, sexually biased procedures rather than objective standards in making final selection decisions for jobs in Special Functions; (d) the use of invalid physical fitness testing to exclude women from certain units, such as the SWAT Team; and (e) the City's continuing failure to take adequate measures to eliminate gender bias from selection procedures in Special Functions despite the availability of measures that would reduce or eliminate discrimination against women. *Id.* Finally, as specific examples of these generalized allegations, Plaintiffs reference the conduct

---

[2] The Seventh Circuit has held that statistical evidence may support a claim of a pattern or practice of discrimination when used in conjunction with other factual evidence in the record. *See Adams v. Ameritech Services, Inc.*, 231 F.3d 414, 423-24 (7th Cir. 2000).

[3] Both complaints cite the same facts. The Court cites to Schloss's complaint only for reference.

against them—Schloss's termination from the Marine and Helicopter Units and Bresnahan's denied promotion despite her clear (and likely superior) qualifications.

The Court finds that Plaintiffs' statistical analyses and the general allegations of discrimination, combined with the specific allegations regarding Schloss and Bresnahan, plausibly allege a widespread practice that discriminates against women. Defendants' motion to dismiss the *Monell* claims is denied.

## II. Equal Protection Conspiracy Claim (Schloss Count VI)

In Count VI, Schloss alleges that individual defendants Georgas, Fitzsimmons, Harnish, Romero, and Hadju conspired to file false sexual harassment complaints against her to create a pretext for her removal from command of the Marine and Helicopter Units. *Schloss*, R. 16 ¶ 103. To plead a § 1983 conspiracy claim, Schloss must show "(1) that the individuals reached an agreement to deprive her of her constitutional rights, and (2) overt acts in furtherance actually deprived her of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). The Schloss defendants argue Schloss cannot proceed on her claim because the intra-corporate conspiracy doctrine precludes it and because she has failed to state a claim for relief. The Court will address each argument in turn.

### A. Intra-Corporate Conspiracy Doctrine

Under the intra-corporate conspiracy doctrine, a conspiracy cannot exist solely between members of the same entity. *Wright v. Illinois Dept. of Children & Family Services*, 40 F.3d 1492, 1508 (7th Cir. 1992). Under this doctrine, managers of a corporation jointly pursuing its lawful business do not become "conspirators" when

10

acts within the scope of their employment are said to be discriminatory or retaliatory. *Id*. The doctrine also applies to municipal corporations. *Id*. The Seventh Circuit has not extended the doctrine to conspiracy claims under § 1983. *See Reitz v. Creighton*, 2015 WL 5081485, at *4 (N.D. Ill. 2015). A majority of district courts in this circuit have found the intra-corporate conspiracy doctrine inapplicable to § 1983 cases involving police. *See Cannon v. Burge*, 2006 WL 273544, at *14 (N.D. Ill. Feb. 2, 2006) (collecting cases), *aff'd*, 752 F.3d 1079 (7th Cir. 2014). The Court need not decide whether the doctrine applies, because it finds that an exception to the doctrine is dispositive.

There are two recognized exceptions to the intra-corporate conspiracy doctrine: (1) where corporate employees are shown to have been motivated solely by personal bias; and (2) where the conspiracy was part of some broader discriminatory pattern or permeated the ranks of the organization's employees. *Spalding v. City of Chicago*, 24 F. Supp. 3d 765, 779 (N.D. Ill. 2014) (citing *Hartman v. Bd. of Trustees Community College Dist. No. 508, Cook County, Ill.*, 4 F.3d 465, 470-71 (7th Cir. 1993)). The second exception applies here—at least on the pleadings—as the complaint alleges a widespread pattern of discrimination in the Special Functions Division, as discussed above. Schloss alleges that defendants Georgas, Fitzsimmons, Harnish, Romero, and Hadju conspired to submit sexual harassment complaints against her to further that widespread pattern of discrimination.[4]

---

[4] Even if that exception did not apply, courts have refused to extend the doctrine where the alleged conspiracy comprised an "independent course of conduct not intended by the employee to serve any purpose of the employer." *See Calabrese v.*

11

### B. Failure to State a Claim

Defendants also argue that Schloss's conspiracy allegations fail to state a claim because Schloss alleges that her removal as commander of the Marine Unit happened a week before the conspirators' meeting. *Schloss*, R. 20 at 4. They point to the allegations that Schloss was removed from command "based upon sex discrimination and in retaliation for the filing of an internal sex discrimination complaint," not because of the sexual harassment claim against her. *See Schloss*, R. 16 ¶ 72. Defendants misconstrue the complaint's allegations. Schloss alleges she was removed from command of the *Helicopter Unit* on June 8, 2016, the day after the meeting and the individual defendants' sexual harassment charges. *Id.* ¶ 72. Schloss also alleges the sexual harassment complaint was a "pretext to remove her from command." *Id.* ¶ 68. Based on these allegations, it is plausible that the individual defendants conspired to create a false basis to remove Schloss that would not depend on her sex or on the fact that she filed an internal complaint. The Schloss defendants' motion to dismiss Count VI is denied.

### III. Illinois Whistleblower Act (Schloss Count VIII)

In Count VIII, Schloss alleges Georgas terminated her because she filed an internal complaint, in violation of the Illinois Whistleblower Act. *Id.* ¶¶ 13, 110. That act provides that "an employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has

---

*Foxx,* 2017 WL 5517247, at *8 (N.D. Ill. Nov. 17, 2017). Because police misconduct cases usually involve "rogue activity by a small group of officers," courts often decline to apply the doctrine in police misconduct cases. *Id.* at *7.

12

reasonable cause to believe that the information discloses a violation of state or federal law, rule, or regulation." 740 ILCS 174/15(b). The defendants argue Schloss fails to explicitly allege that Georgas had any knowledge of Schloss's internal complaint when he terminated her. Such a strict reading of the complaint is not required on a motion to dismiss. Instead, "'[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher*, 880 F.3d at 366 (quoting *Iqbal*, 556 U.S. at 678). Here, the Court can easily draw the inference that Georgas knew of the complaint when he removed Schloss from command. Schloss alleges she filed an internal complaint on June 7, 2016. *See Schloss*, R. 16 ¶ 11. Two hours later, Georgas called a meeting that excluded Schloss. In that meeting, Georgas and the rest of the individual defendants allegedly conspired to file the false sexual harassment complaint against Schloss as a pretext for her termination. *Id.* at ¶ 12. The next day, Georgas removed Schloss from her command of the Helicopter Unit. *Id.* at ¶ 13. Schloss has plausibly alleged a violation of the Illinois Whistleblower Act.

## IV. Illinois Civil Rights Act (Bresnahan Count IV)

Finally, the Bresnahan defendants seek to dismiss Count IV of Bresnahan's complaint as duplicative of her Title VII gender discrimination claim in Count I.[5] Courts have authority to dismiss claims as duplicative of another where "the parties,

---

[5] Defendants also argue that Bresnahan's claim should be dismissed if her *Monell* claim is dismissed because Count IV merely "repackages" the *Monell* claim. R. 31 at 6. Because the Court found Bresnahan's *Monell* claim to be sufficient, it declines to dismiss Bresnahan's Illinois Civil Rights Act claim on that basis.

13

claims, facts and requested relief are substantially the same." *Van Vliet v. Cole Taylor Bank*, 2011 WL 148059, at *2 (N.D. Ill. Jan. 18, 2011) (citing *Norfleet v. Stroger*, 297 Fed. App'x. 538, 540 (7th Cir. 2008)). Bresnahan points out that the two claims offer different relief—Title VII damages are capped at $300,000, while damages under the Illinois Civil Rights Act are not. Because the two claims do not offer the same relief, they are not duplicative. Defendants' motion to dismiss is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Counts IV, VI, and VIII of Schloss's complaint (No. 18-cv-1880, R. 20) is denied. Defendants' motion to dismiss Counts II and IV of Bresnahan's complaint (No. 18-cv-1974, R. 31) is also denied.

ENTERED:

*Thomas M Durkin*
_____

Dated: October 4, 2018

Honorable Thomas M. Durkin
United States District Judge

14