UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLISON SCHLOSS, | |
| Plaintiff, | No. 18 C 1880 |
| v. | Judge Thomas M. Durkin |
| CITY OF CHICAGO, a municipal corporation, and DEPUTY CHIEF STEVE E. GEORGAS, COMMANDER WARREN RICHARDS, SGT. FREDERICK HARNISH, SGT. KAROLY HADJU, ANGEL ROMERO, AND ROBERT FITZSIMMONS, in their individual capacities, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Former Chicago Police Department ("CPD") Lieutenant Allison Schloss brings this action against the City of Chicago and current and former CPD employees for sex discrimination and several related claims. The Court denied the defendants' first partial motion to dismiss in an Order dated October 4, 2018. *See* R. 47. In July 2019, Schloss filed a Second Amended Complaint. The defendants have moved to partially dismiss the Second Amended Complaint's Title VII claims for adverse treatment, hostile work environment, and retaliation (Counts I-III), and to dismiss her 42 U.S.C. § 1983 equal protection claim against Defendant Warren Richards (Count IX). R. 101. Their motion is granted in part and denied in part.

1

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

The Court assumes the parties' familiarity with the facts of this case from its October 4, 2018 Order denying the defendants' first partial motion to dismiss. *See* R. 47. Briefly, Schloss served as a commanding officer in the CPD's Special Functions

Division. Schloss alleges she was removed from her command and transferred to the Major Accidents Investigation Unit ("MAIU") due to rampant sex discrimination in the Special Functions Division and in retaliation for filing a workplace complaint.

Schloss's Second Amended Complaint includes the following additional allegations. On January 2, 2018, the CPD learned that Schloss had received her Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC"). R. 95 ¶ 86. Shortly thereafter, a sergeant approached "nearly every member" of MAIU soliciting them to make complaints against Schloss. *Id.* ¶ 89. Schloss alleges this was done at the behest of her direct supervisor, Defendant Commander Warren Richards. *Id.* ¶¶ 88-89. At the end of January 2018, Richards began to return responses to document and file requests sent by Schloss's unit to other CPD units for corrections. *Id.* ¶ 93. This was the first time since Schloss had been assigned to MAIU that file requests were returned as incorrect. *Id.*

Schloss filed this action on March 15, 2018. *Id.* ¶ 94. Two weeks later, Richards and two other CPD supervisors accused Schloss of misconduct in her department. *Id.* ¶ 95. Schloss went on furlough from mid-April through May 10, 2018. *Id.* ¶ 97. When she returned, numerous responses to other departments' file requests were returned to her with reports explaining why the responses were incorrect. *Id.* ¶ 98. On June 28, 2018, Richards issued a written reprimand to Schloss related to 20 files that had been returned, many due to policy changes about which Schloss had not been informed. *Id.* ¶ 99. On July 2, 2018, Schloss filed a retaliation complaint against Richards. *Id.* ¶ 100. Three weeks later, Richards informed Schloss that she could not

3

work overtime without his written permission. *Id.* ¶ 101.Over the next several months, Richards continued to change the procedure required for processing file requests so that Schloss could not process them properly. *Id.* ¶ 105.

On April 18, 2019, Schloss moved for leave to file her Second Amended Complaint, which included additional allegations of retaliation against Richards and the City. *Id.* ¶ 106. The next day, Schloss learned she was being transferred from MAIU to the Violence Reduction Initiative ("VRI") North. *Id.* ¶ 107. The VRI is less prestigious than MAIU and provided Schloss with fewer opportunities to work overtime. *Id.* ¶ 110. On May 6, 2019, Schloss received a Performance Evaluation form that had been completed by Richards. *Id.* ¶ 112. Richards assigned Schloss a "needs improvement" rating on every aspect of her job. *Id.* ¶ 113. Schloss had not received a single "needs improvement" rating in her previous 29 years with the CPD. *Id.* Schloss also received a Performance Improvement Plan, which she could not comply with because she had already been transferred from MAIU to VRI. *Id.* ¶ 116. Schloss alleges this relentless retaliation was designed to remove her from the CPD. *Id.* ¶ 118. Schloss determined she had no other option but to retire, which she did on May 31, 2019. *Id.*

**Analysis**

The City of Chicago has moved to dismiss the Second Amended Complaint's Title VII claims for adverse treatment (Count I), hostile work environment (Count II), and retaliation (Count III) to the extent they incorporate allegations from Schloss's time in MAIU. In addition, Richards moved to dismiss Schloss's 42 U.S.C.

4

1983 equal protection claim against him (Count IX). Schloss clarifies in her opposition to the defendants' motion that the new allegations regarding Richards and MAIU do not alter or support her claims for sex discrimination/adverse treatment (Count I) or sex discrimination/hostile work environment (Count II). Accordingly, the Court will not consider the amended allegations as they relate to those claims, and the City's motion to partially dismiss Counts I and II is denied as moot. The motion to dismiss Schloss's retaliation claim (Count III) and her equal protection claim against Richards (Count IX) are discussed in turn.

I. **Title VII of the Civil Rights Act of 1964 – Retaliation (against the City of Chicago) (Count III)**

The City of Chicago argues that Schloss's Title VII retaliation claim should be dismissed for failure to exhaust her administrative remedies to the extent she incorporates allegations from her time in MAIU. Specifically, the City contends that Schloss's EEOC charge dealt only with her experience in the Special Functions Division, and that her new allegations involve different people (Richards), a different department (MAIU), and a different time period (2018 as opposed to 2016). As an initial matter, failure to exhaust is an affirmative defense, *see Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999), and complaints do not have to anticipate affirmative defenses to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Nevertheless, considering the issue now does not affect the outcome of the City's motion, and because Schloss does not object, the Court will address it here.

Generally, "a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). A well-recognized exception to this requirement exists, however, for suits "complaining about retaliation for filing the first charge." *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989); *Gawley v. Ind. Univ.*, 276 F.3d 301, 314 n.8 (7th Cir. 2001) ("Of course, an employee is not required to file a separate EEOC charge alleging retaliation when the retaliation occurs in response to the filing of the original EEOC charge."). The rationale for this exception is that a double filing "would serve no purpose except to create additional procedural technicalities." *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 482 (7th Cir. 1966); *see also Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013) ("We have held for practical reasons, to avoid futile procedural technicalities and endless loops of charge/retaliation/ charge/retaliation, etc., that a plaintiff who alleges retaliation for having filed a charge with the EEOC need not file a second EEOC charge to sue for that retaliation.").

Schloss's additional allegations fall into this exception. Notably, a sergeant began soliciting complaints about Schloss less that two weeks after the City learned that she had received her Right to Sue notice. Then, two weeks after Schloss filed her complaint, her supervisors accused her of professional misconduct. Finally, Schloss was transferred from MAIU to VRI the very next day after she amended her complaint to include allegations against Richards. The timing of Schloss's affirmative steps in this lawsuit and the City's subsequent actions support a plausible inference

6

of retaliation. To be sure, most cases falling into the exhaustion exception appear to occur when an employer retaliates directly after the employee files an EEOC charge. Here, Schloss alleges the retaliation occurred after she filed (and then amended) her complaint in this lawsuit. But the defendants offer no reason why this exception should not also apply to lawsuits that follow EEOC charges, especially since the lawsuits necessarily occur post-charge. *See Ford v. Marion Cty. Sheriff's Office*, 942 F.3d 839, 857 n.11 (7th Cir. 2019) ("we have long held that a plaintiff need not file a new charge alleging post-charge retaliation by the employer") (collecting cases); s*ee also McKenzie*, 92 F.3d at 482 (approvingly citing *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066 (2d Cir. 1980), for the proposition that an "act of retaliation was 'directly related' to plaintiff's initiation of litigation and that no second EEOC charge was necessary").

The City contends that even accepting the exhaustion exception in this case, Schloss's alleged post-charge retaliation still must reasonably relate to the EEOC charge, a prerequisite absent here. But Schloss explicitly alleges that the retaliation occurred because of the filing of the EEOC charge, her participation in the EEOC investigation, and her pursuit of this lawsuit. *See Horton v. Jackson Cty. Bd. of Cty. Comm'rs.*, 343 F.3d 897, 898 (7th Cir. 2003) ("retaliation for complaining to the EEOC need not be charged separately from the discrimination that gave rise to the complaint at least . . . if the person discriminated against and the person retaliated against are the same.") (internal citations omitted). And relatedness to the EEOC charge appears especially strong here given the proximity between when Schloss

7

acted in this lawsuit and when the City's alleged retaliatory conduct occurred. Nor, as the City suggests, does it matter that the alleged retaliation occurred two years after Schloss left the Special Functions Division. Indeed, the Seventh Circuit has applied the exhaustion exception to retaliation claims based on conduct that occurred three years after the plaintiff filed her initial charge. *See McKenzie*, 92 F.3d at 484-85 (granting summary judgment for defendant but considering alleged retaliation that occurred three years after plaintiff's EEOC charge). Accordingly, Schloss did not need to file a second EEOC charge to bring a claim against the City for retaliation to the extent she alleges it was in response to her first charge.[1] The City's partial motion to dismiss Count III is denied.

## II. 42 U.S.C. § 1983 – Equal Protection (against Defendant Richards) (Count IX)

Next, Richards argues that Count IX should be dismissed because retaliation is not a cognizable Section 1983 equal protection claim. The Court agrees, and the Seventh Circuit has directly so held. *See Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004) ("the right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause."); *see also Tyler v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 2018 WL 5977925, at *4-5 (N.D. Ill. Nov. 14, 2018) (citing *Boyd* and dismissing Section 1983 equal protection retaliation claim); *Williams v. City of Chicago*, 2017 WL 3169065, at *11 (N.D. Ill. July 26, 2017) (same).

---

[1] Post-charge conduct not in retaliation for the filing and pursuit of Schloss's EEOC charge would not qualify for the exhaustion exception. *See Benjamin v. Katten Muchin & Zavis*, 10 F. App'x 346, 354 (7th Cir. 2001) (explaining that exhaustion exception applies only to retaliatory conduct that occurred *because of* EEOC filing).

In *Boyd*, the court explained that "retaliating against a person for filing charges of sex discrimination is not the same as discriminating against a person on the grounds of sex . . . [and] Congress would not have wanted a Title VII plaintiff to bypass the elaborate 'administrative procedures created by the statute (procedures as applicable to retaliation claims as to any other claims under Title VII), and go directly to court, through the illogical expedient of equating discrimination against a person for filing charges of sex discrimination to sex discrimination itself.'" *Boyd*, 384 F.3d at 898 (quoting *Yatvin v. Madison Metro. Sch. Dist.*, 840 F.3d 412, 418-19 (7th Cir. 1988)). Schloss's reliance on *Locke v. Haessig*, 788 F.3d 662 (7th Cir. 2015), is unavailing. In *Locke*, the court determined that the defendant's retaliatory acts supported an inference of discriminatory intent. The court reasoned that *Boyd* had no bearing on the case because Locke was not asserting a general right to be free from retaliation, but rather that the defendant retaliated against him based on his sex. *Id.* at 672. In contrast, Schloss contends that Richards retaliated against her "for the filing of an internal sex discrimination complaint and this lawsuit." R. 95 ¶ 149. Extending *Locke* to encompass Schloss's claim here would swallow the holding in *Boyd*. Count IX against Richards is dismissed without prejudice.

## Conclusion

For the reasons stated above, the City of Chicago's motion to partially dismiss Count III is denied. Defendant Richards' motion to dismiss is granted and Count IX is dismissed without prejudice.

9

ENTERED:

*Thomas M Durkin*
_____

Honorable Thomas M. Durkin
United States District Judge

Dated: December 10, 2019