IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLISON SCHLOSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 18 C 1880 |
| CITY OF CHICAGO; STEVE E. ) | |
| GEORGAS; FREDERICK ) | Magistrate Judge |
| HARNISH; KAROLY HADJU; ) | Maria Valdez |
| ANGEL ROMERO; ROBERT ) | |
| FITZSIMMONS; and WARREN ) | |
| RICHARDS; ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Consolidated Motion to Compel Production of Documents [Doc. No. 127].[1] For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

Allison Schloss's complaint alleges sex discrimination and retaliation against the City of Chicago Police Department ("CPD") and certain individuals. Schloss claims she was subjected to a hostile working environment and in June 2016 was wrongfully terminated from her position as the commanding officer of the CPD

---

[1] The identical motion was filed in the related case *Bresnahan v. City of Chicago*, No. 18 C 1974. Some requests or arguments relate to only one plaintiff, but to conserve judicial resources, the same order will be entered in both cases, addressing all arguments raised in the consolidated motions.

Marine and Helicopter Unit ("MHU") she had held since May 2014, among other retaliatory acts. Maureen Bresnahan's complaint raises claims of sex discrimination based on CPD's July 2015 failure to promote her to the position of Explosives Technician I in the Special Functions Division's ("SFD") Bomb Squad for which she had applied in February 2015. Schloss and Bresnahan[2] also allege Title VII pattern and practice and *Monell* claims that CPD engaged in ongoing discrimination against women in high profile CPD units such as MHU and the Bomb Squad.

Plaintiffs served their first discovery requests on Defendants in October 2018, and Defendants served their responses in January 2019. In May, the District Judge granted Plaintiffs' motion to compel discovery related to their *Monell* claims. The parties also engaged in numerous Local Rule 37.2 conferences related to Defendants' objections and production in the months following Defendants' discovery responses, and they were only able to resolve some disputes. Plaintiffs filed the present motion in February 2020, claiming that Defendants' production remains deficient, and that they have failed to honor their agreement to produce certain categories of documents and/or give more detail to certain objections claiming production would be burdensome.

Shortly after this motion was filed, and the day before it was set to be heard by the District Judge, Defendants served supplemental and amended discovery responses on Plaintiffs. The District Judge ordered Plaintiffs to review the new discovery responses and referred the motion to this Court for ruling. To determine

---

[2] A third related complaint, *Tapia v. City of Chicago*, No. 19 C 1257, also alleges sex discrimination but is not at issue in the present motion.

2

what remained of the original motion after supplementation, Plaintiffs were ordered to file a status report, which maintained that the supplemental responses did not resolve any of the issues in the motion and in fact raised new problems. According to Defendants, their discovery answers are complete or nearly so.[3]

## DISCUSSION

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see* Fed. R. Civ. P. 34; Fed. R. Civ. P. 37(a)(3)(B). Responses to document requests "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Furthermore, an objection to a document request "must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). As the objecting parties,

---

[3] Defendants' response to the motion was filed two weeks after Plaintiffs' status report. Due to the extensions of time in General Order 20-0012 and its amendments, Plaintiffs' reply was not filed until nearly three months after the response. Despite the Court's encouragement that they continue working together, the parties were apparently unable to resolve any outstanding issues during the delay.

3

Defendants have the burden to demonstrate that the discovery requests are improper. *See, e.g., Mann v. City of Chi.*, No. 15 C 9197, 2017 WL 3970592, at *2 (N.D. Ill. Sept. 8, 2017) (citing *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004)).

**Form of Production/Temporal Scope - Request Nos. 47, 48, 49, 53, and 54**

According to Plaintiffs, Defendants agreed to produce documents responsive to Request Nos. 48, 49, 53, and 54 in early 2019, but they have not yet done so. Plaintiffs complain that (1) Defendants have not specified whether the additional production would be in ESI or hard copy form; (2) they have not advised a date certain for production of any hard copy documents; and (3) they unilaterally restricted their production of Request Nos. 47-49 to November 1, 2013 to the present.

Defendants take issue with Plaintiffs' complaint that the form of production (ESI or hard copy) was not specified, as well as their request that production be ordered on a date certain, because the parties were still in the process of negotiating the ESI production protocol, and further that Defendants should not be required to "painstakingly identify for each Request whether future productions will include paper or ESI." (Defs.' Resp. at 6.)

Defendants appear to misunderstand Plaintiffs' argument. Plaintiffs' motion does not seek to compel ESI discovery and acknowledges that ESI is still being discussed. But because Defendants have not foreclosed the existence of hard copy

4

discovery, Plaintiffs are proceeding under the assumption that some may exist, and if so, its production should be ordered on a date certain.

The Court agrees that Defendants should produce any responsive hard copies forthwith. Defendants' implication that it would be too difficult to determine whether hard copies exist is unpersuasive, as Plaintiffs' documents requests were served nearly a year and a half ago. The Court emphasizes, however, that hard copies need only be produced to the extent they are not also part of an ESI production. Defendant is not obligated to produce both a hard copy and an ESI version of the same documents.

Defendants' objection to the temporal scope of Request Nos. 47-49 is somewhat more persuasive. The requests relate to communications generally between *Bresnahan* defendant Egan and the Illinois Department of Natural Resources ("IDNR") and specifically regarding IDNR's issuance of explosives licenses to persons other than Bresnahan. Request No. 47 seeks documents from 2008 to the present, but Request Nos. 48 and 49 contain no time limitation. Defendants object to producing any documents from before November 1, 2013, a date to which the parties previously agreed to limit certain ESI searches, because an unlimited or a twelve-year scope would require production of irrelevant documents, and the requests are not proportional to the needs of the case. Plaintiffs contend that Defendants' decision to limit the temporal scope was made unilaterally and arbitrarily, and the parties did not agree to limit document discovery as they had agreed to limit ESI.

5

"District courts addressing discovery-related disputes in cases involving Monell claims have routinely recognized that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff sued only the individuals directly involved in the deprivation of his rights." *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 6568242, at *3 (N.D. Ill. Dec. 17, 2012). However, Plaintiffs do not explain how decades of documents unrelated to Bresnahan would be relevant to her claim that Egan harassed her by wrongfully challenging her license. The Court concludes that a limitation to a period of four years prior to the allegedly wrongful employment action "strikes the proper balance between the value of the material sought and the burden and time that production would place on the parties and the Court." *DeLeon-Reyes v. Guevara*, No. 18 C 1028, 2019 WL 4278043, at *8 (N.D. Ill. Sept. 10, 2019). Defendants are therefore ordered to produce documents from 2011.

**Overbroad and Burdensome - Request Nos. 1-4, 6-7, 12, 17-22, 27-35, 38, 40-43, 45-46, 51-55, 91-93, 95, and 116**

Although Defendants have withdrawn some of their objections based on overbreadth and burden, they maintain the objections with respect to Request Nos. 1-4, 6-7, 12, 17-22, 27-35, 38, 40-43, 45-46, 51-55, 91-93, 95, and 116. Defendants claim they have shown the requests are overbroad by providing "detailed objections and justification for their positions." (Defs.' Resp. at 7.) However, nearly all of Defendants' objections are conclusory and do not specify why the request is overbroad, nor do they describe the nature or scope of the burden of production or state whether any documents are being withheld on the basis of the objection.

6

Defendants' response brief does not illuminate the bases for those conclusory objections any further, and they have thus failed to meet their burden of showing that those document requests are improper. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011).

A handful of Defendants' objections contain enough detail to evaluate. Request No. 21 asks for documents "evidencing that [defendant] Georgas treated a male commanding officer of any SFD unit in a manner similar to his treatment of Schloss." The Court agrees that the wording of this request is so vague as to be devoid of meaning, and Defendants need not respond. In Request No. 30, Plaintiffs seek documents "related to communications between Georgas and Marianovich concerning staffing or overtime in the Marine or Helicopter Units." Defendants contend that the request is overbroad due to its lack of a temporal scope, because Schloss was only in SFD from 2014 to 2016. The request is overbroad as framed, and as discussed above, Defendants need only produce communications from 2012.

Defendants also object to the lack of a time limitation in Request No. 95, which seeks documents "related to your decision to use oral interviews as a selection procedure for the explosives technician I position." According to Defendants, the request is overbroad because it seeks documents for a seventeen-year period. But the request asks for evidence related to a decision fixed in time at some point within the last seventeen years, not seventeen years' worth of documents. Furthermore, even if the decision predated Bresnahan's application by several years, the reasons

7

behind it could be relevant to her claims of unlawful discrimination and are discoverable.

**FOIA - Request No. 13**

Request No. 13 asks for "[a]ll open records, public records, or Freedom of Information requests received from Bresnahan during the period 2014 to the present; all documents reviewed or gathered in response to the requests; all email and other communications related to the requests; and all documents and ESI justifying your failure to respond to the requests."

Defendants' original response objected to the request based on the attorney-client privilege and work product doctrine, as well as on the grounds that it was overbroad, vague, and sought information that was not relevant and disproportional to the needs of the case. Defendants further asserted that the term "related to" was vague. In their supplemental response served after the present motion was filed, Defendants added objections that "this request is duplicative and seeks information that already is within Plaintiff's possession and control. The City further objects on the grounds that this request seeks to inappropriately skirt the FOIA process. Notwithstanding and without waiving the foregoing or General Objections, the City refers Plaintiff Bresnahan to documents already produced at Bates Nos. BRES-DEF002675 – BRES-DEF002681. The City is otherwise withholding documents based on its objections."

Plaintiffs argue that the newly asserted objections were waived. Defendants dispute the notion of waiver in this context because (1) the ongoing duty to

8

supplement discovery responses allows a party to continue raising objections and privileges as well; (2) unlike objections to interrogatories, objections to document requests cannot be waived; and (3) Plaintiffs are not prejudiced by the timing of the objections and privilege assertions.

Defendants are correct that unlike Rule 33, Rule 34 does not contain an express waiver provision. *See* Fed. R. Civ. P. 33 ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."). However, courts in this district have applied Rule 33's waiver provision to Rule 34 document requests. *See Woods v. Cook County*, No. 13 C 2607, 2014 WL 7261277, at *2 (N.D. Ill. Dec. 19, 2014) (St. Eve, J.) (holding that untimely objections to document requests are waived); *Martinez v. Cook County*, No. 11 C 1794, 2012 WL 6186601, at *3 (N.D. Ill. Dec. 12, 2012) ("A party's failure to timely object to [Rule 34] discovery requests without demonstrating good cause for the delay may result in a waiver of all objections that could otherwise have been asserted."). Defendants do not contend that good cause exists for delaying these objections for over a year after the requests were originally served, and the Court can find none. The objections to Request No. 13 were based on the request itself; they could have been timely made without additional inquiry or document review.

Defendants further fault Bresnahan for "never identifying what additional documents, if any, she desires or believes exist. The City should not be made to guess what additional documents Plaintiff seeks." (Defs.' Resp. at 10.) This argument is baffling, as Defendants' response acknowledges that they are

9

withholding documents based on their objections. Finally, Defendants claim that Request No. 13 is redundant, because she can now obtain the information she previously sought through FOIA via a discovery request instead. This argument is entirely unpersuasive, as the request seeks internal documents related to the FOIA response, not merely the information originally requested.

**Race Data - Request Nos. 56, 57, and 85**

Plaintiffs seek monthly (or quarterly) data reporting for all SFC officers from 2008 to the present, including their name, race, sex, star number, date of hire, date of promotion/selection, job title, title code, and pay code (Request No. 56); data showing the current demographic composition of the CPD, listed by sex, race, and rank (Request No. 57); and evidence of steps to eliminate bias, including racial and gender bias, in the selection of candidates for promotion to Explosives Technician I (Request No. 85).

Defendants object to producing any race information, arguing that it is irrelevant to any claim or defense, because the complaints do not contain allegations related to race. Defendants also assert that they do not maintain reports compiling all of the listed data points on a monthly or quarterly basis, so they would need to create the requested documents.

Plaintiffs believe that race data is relevant to their *Monell* claims for three reasons: (1) "selection procedures that have an adverse impact on race often disproportionately disadvantage women and the two variables (race and sex) need to be separately examined"; (2) Defendants may argue that "some procedures

10

implemented to try to create preferences for people of color can have the effect of discriminating against women"; and (3) "Plaintiffs have alleged unlawful stereotyping, which frequently means that the decision makers prefer people like themselves (here, the decision makers in the Special Functions Division are primarily white men)." (Pls.' Status Rpt. at 3 n.3.)

First, Plaintiffs have not to this point demonstrated that race data is relevant to their claims, nor have they shown that they must disaggregate race data in order to prove gender discrimination. Plaintiffs' second rationale is somewhat more persuasive, but it is premised on a defense that Defendants have not yet asserted. If Defendants do not produce the data but later try to assert a defense that the allegedly discriminatory procedures were adopted in order to avoid the impact of other procedures on minorities, then Plaintiffs may raise that with the trial court. Plaintiffs' third justification also does not support their request, as the complaints allege discrimination based on gender alone. Without a demonstrated relevance of racial demographic information, it is not proportional to the needs in the case and need not be produced at this time.

**Drowning Data - Request Nos. 17-18**

Request No. 17 asks for documents "authored by DPC or any other entity or person, that discuss or analyze drownings in Lake Michigan or another body of water policed by the Marine Unit in the past 20 years." Request No. 18 seeks documents "related to the drowning of any person in Lake Michigan or another body

11

of water policed by the Marine Unit since 2008."[4] Defendants object to these requests due to their broad temporal scope and the substantial burden of gathering thousands of documents related to numerous drowning incidents over that time span. Indeed, Defendants are concerned that they could ever certify that they have fully complied with the requests. Defendants did produce documents related to the 2016 drowning incident that allegedly led to Schloss's reassignment and disclosed all drowning-related lawsuits since 2008; and the parties have agreed to several ESI search phrases that could identify additional documents.

The Court agrees that the vast scope of the requests is disproportionate to their relevance. Request No. 17 should be limited to reports or analysis of drownings in Marine Unit waters from 2012. Defendants' response to Request No. 18 can be produced in stages. Defendants will first produce either police reports or other documents sufficient to allow Plaintiffs to determine the circumstances of each drowning incident and the Marine Unit's response, limited to drownings since 2012. After reviewing this summary information, if Plaintiffs believe further details of a particular incident are relevant and proportional under Rule 26, they may ask for more documentation. Plaintiffs are cautioned that they must limit further inquiry to closely relevant cases.

---

[4] Request No. 18 excludes documents covered by Request No. 16, which asks for documents "evidencing that any commanding officer of the Marine Unit has ever been reassigned or had his vehicle removed because a person drowned in Lake Michigan or another body of water policed by the Marine Unit." Request No. 16 is not at issue in this motion.

12

**Law Enforcement Investigative Privilege - Request Nos. 4-11, 14-16, 18, 31-34, 38, 45-46, 99, 100, and 118**

Defendants' supplemental response raises the law enforcement investigative privilege for Request Nos. 4-11, 14-16, 18, 31-34, 38, 45-46, 99, 100, and 118. They claim that because Plaintiffs' requests seek information such as Complaint Register ("CR") files beyond those stated in the complaints, the privilege is necessary to protect those CRs from disclosure. By way of example, Request No. 4 asks for each Plaintiff's complete file, which would include CRs brought by civilians, CRs in which Plaintiffs were witnesses, and other files that Defendants contend are unrelated.

The privilege is intended "to prevent the harm to law enforcement efforts which may arise from public disclosure of investigative files, . . . to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *Lewis v. City of Chi.*, No. 04 C 3904, 2004 WL 2608302, at *1 (N.D. Ill. Nov. 16, 2004) (internal quotations and citations omitted). It is a qualified, rather than absolute, privilege and it can be overridden if the need for the materials outweighs the harm to the government. *Id.* at *2 ("This balancing test takes place on the merits, but only after threshold procedural requirements have been met."); *see Munive v. Town of Cicero*, No. 12 C 5481, 2013 WL 1286664, at *2 (N.D. Ill. Mar. 28, 2013). In order to meet the burden of showing that disclosure of the material would cause harm, a responsible official within the entity asserting the privilege "must lodge a formal claim of privilege, after actual

13

personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege." *Lewis*, 2004 WL 2608302, at *2 (internal quotations and citations omitted).

However, Defendants have not actually asserted the privilege, and thus the Court need not determine whether it applies here. Defendants' anticipatory claim that some responsive documents might be harmful if disclosed does not meet either the procedural or substantive requirement of the investigative privilege. *See Harris v. City of Chi.*, 1:14-CV-04391, 2015 WL 7351717, at *1 (N.D. Ill. Nov. 20, 2015) ("The City's failure to identify a specific investigative harm here is a bar to its asserted privilege."); *see also Hobley v. Burge*, No. 03 C 3678, 2004 WL 1687005, at *2 (N.D. Ill. July 26, 2004) (finding that failing to expressly assert a privilege and provide a log of withheld documents can act as a waiver of the privilege). Defendants acknowledge as much, stating that they are in the process of trying to identify open CRs that they intend to withhold, and if they do so, they will provide the necessary affidavit. If Defendants go forward and assert the privilege, however, they must be mindful that the objection will be considered waived unless they demonstrate good cause for the extreme delay. The Court also emphasizes that even if the delay is ultimately excused, the privilege will be strictly construed. The response brief suggests that Defendants may seek to shield CRs merely because they "extend far beyond" the allegations in the complaint, "have no bearing" on the case, or are "unrelated" to the litigation; relevance, however, is not a factor in

14

considering the application of the privilege. Defendants must either properly assert the privilege, consistent with relevant case law and this order, or produce all relevant documents.[5]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Consolidated Motion to Compel Production of Documents [Doc. No. 127] is granted in part and denied in part. Defendant must produce all outstanding discovery, as stated in this Order, no later than August 18, 2020.

**SO ORDERED.**  **ENTERED:**

*Maria Valdez*

**DATE:**  **July 28, 2020**

                                    **HON. MARIA VALDEZ**
                                    **United States Magistrate Judge**

---

[5] Defendants' responses also asserted numerous definitional objections. The Court agrees with Plaintiffs that most of them are commonly used words, such as "related to" or "considered." To the extent that Defendants are truly confused about the use of the objected-to words and phrases in context, that is precisely the purpose of the meet and confer process. The Court trusts that Plaintiffs are interested in obtaining relevant information and will therefore work with Defendants to clarify the requests if necessary and agree on shared definitions.