IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLISON SCHLOSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 18-cv-1880 |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | Mag. Judge Maria Valdez |
| CITY OF CHICAGO, et al. | ) | |
| | ) | |
| Defendants, | ) | |

*and*

| | | |
|---|---|---|
| MAUREEN BRESNAHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 18-cv-1974 |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | Mag. Judge Maria Valdez |
| CITY OF CHICAGO, et al. | ) | |
| | ) | |
| Defendants, | ) | |

*and*

| | | |
|---|---|---|
| MELISSA TAPIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 19-cv-01257 |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | Mag. Judge Maria Valdez |
| CITY OF CHICAGO, et al. | ) | |
| | ) | |
| Defendants, | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' JOINT AND CONSOLIDATED MOTION
TO BIFURCATE PLAINTIFFS' RESPECTIVE *MONELL*
<u>CLAIMS AND STAY EXPERT AND DAMAGES DISCOVERY</u>**

Plaintiffs Allison Schloss, Maureen Bresnahan, and Melissa Tapia, by their attorneys, file their Memorandum in Opposition to Defendants' Joint and Consolidated Motion to Bifurcate Plaintiffs' Respective *Monell* Claims and Stay Expert and Damages Discovery ("Motion to Bifurcate"). In support thereof, Plaintiffs state as follows:

## Introduction

Each Plaintiff in these three related, but not consolidated, cases has sued Defendant the City of Chicago (the "City"), for sex discrimination under Title VII of the Civil Rights Act of 1964 under both disparate treatment and pattern and practice theories. *See Schloss*, Dkt. 95, ¶¶ 28-85, 119-121; *Bresnahan*, Dkt. 15, ¶¶ 32-110; *Tapia*, ¶¶ 27-84, 96-98. Because Plaintiffs work for a municipal employer, they also each brought Section 1983 claims for equal protection violations against the City under *Monell v. New York Dep't of Social Services*, 436 U.S. 658 (1973). *See Schloss*, Dkt. 95, ¶¶ 79-85, 128-131; *Bresnahan*, Dkt. 15, ¶¶ 100-106, 111-114; *Tapia*, ¶¶ 78-88. Plaintiffs' Title VII pattern and practice claims are identical to their *Monell* claims; the same evidence will be introduced to prove both claims and the same expert witnesses will testify in support of both claims. Moreover, the same evidence that supports the Title VII pattern and practice claims and the *Monell* claims is admissible to support Plaintiffs' Title VII disparate treatment claims and the same expert witnesses will testify in support of those claims.

This is not a motion to bifurcate the *Monell* claims for trial. *See* Dkt. 255 at n.3 ("Defendants reserve their right to seek to bifurcate the *Monell* claims for trial."). Defendants never moved to bifurcate *Monell* discovery and fact discovery has been completed in all three

cases. *See* Dkt. 220.[1] This is a discovery motion directed at expert discovery alone.[2] Defendants are seeking a stay of "*Monell* expert discovery" but an expert discovery schedule has already been entered by Magistrate Judge Valdez.[3] *See* Dkt. 262, 265. When Judge Valdez set the expert discovery schedule, she denied earlier requests made by Defendants to stay expert discovery until after dispositive motions were filed. Dkt. 262. Defendants' request here to stay expert discovery is, thus, an improper end-run around Judge Valdez's orders.

Defendants' Motion to Bifurcate treats Plaintiffs' cases as if they were typical civil rights cases brought against police officers and the City for excessive force, deliberate indifference, or wrongful arrest. They are not. Defendants pretend as if the City's liability depends only on Plaintiffs' *Monell* claims. It does not. Defendants suggest there are great efficiencies to be gained and serious prejudices to be avoided by bifurcating and staying "*Monell* expert discovery." There are none. Plaintiffs' Title VII and *Monell* claims should proceed together through the next phase of the litigation: expert discovery, for which Judge Valdez has already set a schedule. Defendants' Motion to Bifurcate should be denied in its entirety.

---

[1]   References are to the docket in the *Schloss v. City of Chicago, et al.* case, unless otherwise noted.

[2]   Although Defendants also purport to seek a stay of "damages" discovery, Dkt. 255 at 2, 22, they never develop an argument in support of this relief. In any event, fact discovery in all three cases closed on October 18, 2021. Dkt. 220.

[3]   The Court referred all matters relating to discovery supervision to Judge Valdez in February 2020. Dkt. 129, 130. The Court made clear at the time that Judge Valdez had the authority to set an expert discovery cutoff date. *See* Dkt. 138-4, Tr. of Hearing, 2/11/20 at 10.

## Argument

### A. Bifurcation Will Not Promote Judicial Efficiency or Economy.

Defendants ignore one salient fact throughout their arguments—this is a Title VII case.[4] Each Plaintiff has brought both individual disparate treatment and pattern or practice Title VII sex discrimination claims against the City. *See Schloss*, Dkt. 95, ¶¶ 28-85, 119-121; *Bresnahan*, Dkt. 15, ¶¶ 32-110; *Tapia*, ¶¶ 27-84, 96-98. The evidence Plaintiffs will introduce to support those claims are the statistics and demographics relating to the representation of women in the Special Functions Division, the City's use of discriminatory selection procedures, and the City's failure to validate any of its selection procedures, that Plaintiffs developed during fact discovery. That evidence is admissible to support Plaintiffs' Title VII individual disparate treatment discrimination claims *and* Plaintiffs' individual Title VII "pattern or practice" claims.[5] *See Adams v. Ameritech Services, Inc.*, 231 F.3d 414, 423 (7th Cir. 2000). As the Seventh Circuit explained:

> [D]efendants have questioned whether statistical evidence as a whole can ever be useful in a case alleging disparate treatment or a discriminatory pattern or practice, as opposed to a disparate impact case. The short answer is yes: statistical evidence can be very

---

[4] Defendants devote eight pages of their brief to a description of the facts underlying Plaintiffs' claims. *See* Dkt. 255 at 2-9. This recitation of facts is simply a preview of Defendants' summary judgment motions. In addition to the facts being misstated and incomplete, none of them are necessary to this Court's consideration of whether to stay the expert discovery that Judge Valdez has already ordered to proceed.

[5] Defendants are simply wrong that only the EEOC can bring a pattern or practice case. *See* Dkt. 255 at 18-19. Indeed, one of the cases upon which Defendants rely, *Council 31, Am. Fed'n of State, County & Mun. Emps., AFL-CIO v. Ward*, 978 F.2d 373, 378 (7th Cir. 1992), recognizes that "individual plaintiffs may bring [a] 'pattern or practice' action," *citing King v. General Electric Co.*, 960 F.2d 617, 628 (7th Cir. 1992). The Seventh Circuit Pattern Jury Instruction 3.03 on Pattern or Practice also recognizes that an individual may bring a pattern or practice claim. *See* Seventh Circuit Pattern Instruction 3.03, cmt. b ("If this is *an individual pattern or practice claim*, then the court should provide both paragraphs to the jury") (emphasis added).

> useful to prove discrimination in either or both of those two kinds of cases, but it will likely not be sufficient in itself.

*Id. See also Mister v. Illinois C.G.R. Co.*, 832 F.2d 1427, 1431-1437 (7th Cir. 1987) (explaining utility of statistical evidence in disparate treatment case). Plaintiffs will also introduce the statistical and demographic evidence and evidence relating to the Special Functions Division's selection procedures to support their *Monell* equal protection claims. In addition to the evidence common to each of the Plaintiffs' claims, Plaintiffs will introduce evidence relating to specific adverse actions taken against them. *See Baylie v. Fed. Reserve Bd.*, 476 F.3d 522, 524 (7th Cir. 2007) (recognizing relevance of statistical evidence when coupled with other evidence of discrimination). That specific evidence also happens to be relevant to each of the Section 1983 claims against the individual Defendants.

In other words, Plaintiffs' individual disparate treatment claims, their Title VII pattern or practice claims, and their *Monell* equal protection claims are based on the same evidence. They are coextensive. Thus, Plaintiffs' experts will be preparing reports and offering opinions that Plaintiffs will present in support of both of their Title VII claims as well as their *Monell* claims. Defendants ask the Court to bifurcate the case in order to stay "*Monell* expert discovery," but there *is* no separate "*Monell* expert discovery" in this case. Plaintiffs' expert is a Title VII employee selection and statistical expert. She is not a "*Monell*" expert. Thus, there are no "efficiencies" to be gained by bifurcating "*Monell* expert discovery" in these cases.

Motions to bifurcate *Monell* claims are increasingly common but the outcome is inherently case-specific. *See Allison v. Gallagher,* 2012 WL 4760863, 2012 U.S. Dist. LEXIS 144138, *3 (N.D. Ill. Oct. 5, 2012), *citing Ojeda-Beltran v. Lucio*, 2008 WL 272815, 2008 U.S. Dist. LEXIS 54116, *4 (N.D. Ill. July 16, 2008). As this Court has explained, bifurcation is the most sensible in a civil rights action when the municipality cannot be liable absent the liability of

5

the state actor, such as in an excessive force case. *Arrington v. City of Chi.*, 2018 WL 3861552, 2018 U.S. Dist. LEXIS 136936, *3-4 (N.D. Ill. Aug. 14, 2018). In those kinds of cases, the individual claims and the *Monell* claims are not coextensive. They do not rely on the same evidence and there are efficiencies to be gained by bifurcating the claims, typically for both discovery and trial.

None of the cases Defendants rely on where bifurcation was granted was a Title VII case. In each of those cases the only federal claim brought against the governmental agency was a *Monell* claim, and, in most of those cases, the Court specifically found that the governmental agency could not be found liable on the *Monell* claim if plaintiff did not succeed on the underlying claims against the individual defendants.[6] *See Treece v. Hochstetler*, 213 F.3d 360, 362, 365 (7th Cir. 2000) (plaintiff had to prevail on § 1983 claim for malicious prosecution); *Ezell v. City of Chi.*, 2019 WL 3776616, 2019 U.S. Dist. LEXIS 135227, *5-6, *15 (N.D. Ill. Aug. 12, 2019) (plaintiff had to prevail on § 1983 claims for coercion of confession, fabrication of evidence, withholding of evidence); *Arrington v. City of Chi.*, 2018 U.S. Dist. LEXIS 136936, at *2, *3 (plaintiff had to prevail on § 1983 claims for excessive force); *Veal v. Kachiroubas*, 2014 WL 321708, 2014 U.S. Dist. LEXIS 10599, *1-2, *10 (N.D. Ill. Jan. 29, 2014) (plaintiff had to prevail on § 1983 claims for false arrest); *Carr v. City of N. Chi.*, 908 F. Supp. 2d 926,

---

[6] The lone exception among the cases Defendants cite is this Court's opinion in *Bradford v. City of Chi.*, 2019 WL 5208852, 2019 U.S. Dist. LEXIS 178832, *4 (N.D. Ill. Oct. 16, 2019), where plaintiff brought claims against individuals and the City arising from her son's suicide while in custody in a City lockup. There, the Court recognized that there was a potential "liability gap," because the City could be held liable even if plaintiff did not prevail on her § 1983 claims against the individual defendants. *Id.* at *13. Nevertheless, the Court ordered bifurcation of expert discovery and trial on the *Monell* claims, in large part because plaintiff sought only compensatory damages and attorneys' fees and the City had offered a limited consent of judgment against it in the event the individual defendants were found liable. *Id.* at *15. That is not true here, where Plaintiffs have sought extensive injunctive relief and the City has offered no consent of judgment. Also, unlike here, it appears in *Bradford* that the parties did not contemplate relying on any expert testimony to prove the claims against the individuals that would proceed to trial.

6

930 (N.D. Ill. 2012) (plaintiff had to prevail on § 1983 claims for excessive force, failure to protect, and conspiracy to interfere with civil rights); *Kitchen v. Burge*, 2012 U.S. Dist. LEXIS 158088, *3, *11 (N.D. Ill. Nov. 2, 2012) (plaintiff had to prevail on § 1983 claims for coercion of confession); *Ojeda-Beltran v. Lucio*, 2008 U.S. Dist. LEXIS 54116, at *2, *5 (plaintiff had to prevail on § 1983 claims for excessive force, failure to intervene, unlawful seizure, Equal Protection and Due Process clause violations).[7]

In addition, when, as here, the governmental agency can be found liable independent of the liability of individual state actors, bifurcation typically does not advance the litigation. *See Allison*, 2012 U.S. Dist. LEXIS 144138 at *5, 9 (denying motion to bifurcate *Monell* claims for discovery in part because facts supported Plaintiff's argument that municipal liability could be found in the absence of individual liability). As the Seventh Circuit explained in *Thomas v. Cook County Sheriff's Dep't.*, 604 F.3d 293, 305 (7th Cir. 2009), "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." (emphasis in original). The Court found in *Thomas* that it was not difficult to reconcile a jury verdict that individual defendants were not deliberately indifferent to detainee's rights to adequate medical care with a verdict that the County was liable because of the County's well-documented inadequacies in its policies for retrieving medical forms. *Id.*

Here, the City can be found liable on Plaintiffs' Title VII claims regardless of what happens on the Section 1983 claims. Moreover, Plaintiffs could prevail on their *Monell* claims

---

[7] Furthermore, in all but one of those cases, the City (or other governmental agency) had consented to entry of judgment against it in the event the plaintiff prevailed on the constitutional claims against the individual defendants. *See Treece*, 213 F.3d at 364; *Bradford*, 2019 U.S. Dist. LEXIS 178832, at *5; *Ezell*, 2019 U.S. Dist. LEXIS 135227, at *12-13; *Arrington*, 2018 U.S. Dist. LEXIS 136936, at *4; *Carr*, 908 F. Supp. 2d at 930; *Kitchen*, 2012 U.S. Dist. LEXIS 158088, at *27; *Ojeda-Beltran*, 2008 U.S. Dist. LEXIS 54116, at *9-10. *But see Veal*, 2014 U.S. Dist. LEXIS 10599 (opinion silent on whether City had consented to entry of judgment). The City has made no such offer here.

7

against the City even if they do not prevail on their Section 1983 claims against individual defendants because the evidence will show that the City's use of non-blinded interviews, invalid physical testing, and its failure to validate any of the selection processes for positions in the Special Functions Division contributed to and created a widespread practice that discriminated against women, which led to the adverse actions against each of the Plaintiffs who were thwarted in their efforts to join or maintain positions in the SFD because of their sex. Because Plaintiffs can proceed on their Title VII and *Monell* claims regardless of the outcome on the claims against the individual Defendants, there are no advantages here to bifurcation.

Defendants also contend that the *Monell* claims will require extensive work, which may never need to be considered. *See* Dkt. 255 at 14-15. That simply is not the case, given that the City is the Defendant under Title VII. Further, as shown above, the City can be liable under a *Monell* theory for the equal protection violations alleged in these cases even if the individual Defendants are not found liable.[8] And again, Defendants' argument neglects that Plaintiffs' experts will prepare their opinions and reports in connection with both the Title VII and the *Monell* claims; thus, this work will continue regardless of bifurcation. A stay of "*Monell* expert discovery" will not create any efficiencies or economies.

**B.    Defendants Have Failed to Show Any Undue Prejudice to Them If *Monell* Expert Discovery is not Bifurcated.**

Defendants are not seeking to bifurcate the *Monell* claims for trial at this time. *See* Dkt. 255 at n.3 ("Defendants reserve their right to seek to bifurcate the *Monell* claims for trial."). Yet, most of the arguments Defendants make to establish undue prejudice relate to the presentation of evidence, potential confusion of the jury, and the possibility of an improper verdict against the

---

[8]    Moreover, this argument directly contradicts Defendants' argument later in their brief, that "Plaintiffs may still pursue their *Monell* claims, if they so choose, once Defendants' motions for summary judgment on Plaintiffs' other claims are resolved." Dkt. 255 at 21.

City at trial. *See, e.g.,* Dkt. 255 at 15-16 (factfinder won't be able to parse out evidence of conduct of individuals from evidence of conduct of City), 16 (individual defendants face liability by association alone), 17 (the City risks the jury wrongfully finding it liable under a *respondeat superior* theory). Because Defendants are *not* moving for bifurcation of the *Monell* claims at trial these arguments are inapposite.

If expert discovery proceeds under the schedule entered by Judge Valdez, Plaintiffs anticipate the next steps in the litigation will be completion of expert discovery followed by Defendants moving for summary judgment on some or all of their claims. Clearly, the Court will be able to parse pattern and practice evidence applicable to the Title VII and *Monell* claims from evidence applicable to the claims against the individual Defendants if summary judgment motions are filed. Defendants' concerns about the factfinder being confused about evidence or holding the wrong party liable don't apply here. Even at trial, "our system generally trusts jurors to understand and follow limiting instructions regarding consideration of evidence against some defendants and not others . . ." *Medina v. City of Chi.*, 100 F. Supp. 2d 893, 897 (N.D. Ill. 2000).

The only argument Defendants make with respect to possible prejudice to them if expert discovery proceeds on all claims, including the *Monell* claims, is that the individual Defendants will be harmed because the expert discovery will "be far more onerous, expensive and expansive" than the *Monell* fact discovery was. *See* Dkt. 255 at 17. It is not exactly clear what Defendants are arguing; surely, the individual Defendants will not be footing the bill for experts, especially if the individual Defendants conclude they don't need expert witnesses to defend the claims against them. Again, the argument devolves to potential prejudice at trial by the introduction of expert evidence that doesn't necessarily relate to the individual Defendants. *See* Dkt. 255 at 18.

9

The cold hard truth here is that the facts underlying all of Plaintiffs' claims are intertwined: the City is exposed to liability under Title VII for disparate treatment discrimination directed at each of the three Plaintiffs, which Plaintiffs will prove with evidence of the City's unlawful pattern or practice of gender discrimination as well as evidence of their own individual treatment; the City is exposed to liability under Section 1983, for an unconstitutional custom and practice, that is the same as the Title VII pattern or practice and that led to widespread discrimination against women in the Special Functions Division.[9] The conduct of the individual defendants expose them individually to liability under Section 1983. The claims here are simply too intertwined to offer the bright line division required for either bifurcation or a stay of expert discovery.

### C. Plaintiffs Will be Prejudiced if Claims are Bifurcated and Expert Discovery is Stayed.

Defendants argue that Plaintiffs will actually "benefit" from bifurcation and a stay of "*Monell* expert discovery" because they "enjoyed the advantage of obtaining *Monell* fact discovery." Dkt. 255 at 20. According to Defendants, Plaintiffs' other claims "'can go forward much more quickly without the need for expensive and costly expert discovery.'" *Id.*, citing *Bradford*, 2019 U.S. Dist. LEXIS 178832, at *16. There is no "much more quickly" to be gained here. In *Bradford*, the *Monell* claims were bifurcated for both expert discovery and trial because there was apparently no need for expert discovery on the claims that would proceed to trial. *Id.* at

---

[9] Defendants' suggestion that these allegations were "just enough" to get past the pleading stage, Dkt. 255 at 12, ignores this Court's conclusion that Plaintiff's allegations were "far from 'boilerplate,'" *Tapia*, Dkt. 42 at 10, and that "the combination of Plaintiff's statistical analyses, allegations of discriminatory practices, and description of her own experience is enough to plausibly allege a *Monell* claim against the City for a widespread practice of discrimination against women in the Special Functions Division." *Id. See also Schloss*, Dkt. 47 at 10; *Bresnahan*, Dkt. 42 at 10.

10

*14. That is not the case here. Plaintiffs' liability expert is a Title VII employee selection and statistical expert. She is not a "*Monell*" expert. She will be offering her opinions relating to *all* of Plaintiffs' sex discrimination claims on the schedule set by Judge Valdez.

Plaintiffs will absolutely be prejudiced if the *Monell* claims are bifurcated from all of Plaintiffs' other claims, for purposes of expert discovery, summary judgment, trial, or anything else. All of the sex discrimination claims in these cases are intertwined: evidence and expert discovery relevant to the Title VII claims is also relevant to the *Monell* claims and evidence relevant to the equal protection claims against the individual Defendants is also relevant to the Title VII claims. Plaintiffs should not have to engage in multiple rounds of expert discovery, respond to multiple rounds of summary judgment motions, or present their claims in multiple trials simply because Defendants don't want to respond to Plaintiffs' experts' opinions.

## Conclusion

For all the foregoing reasons, Plaintiffs respectfully request that Defendants' Joint and Consolidated Motion to Bifurcate Plaintiffs' Respective *Monell* Claims and Stay Expert and Damages Discovery be denied in its entirety.

Dated: February 28, 2022

Respectfully submitted,

**ALLISON SCHLOSS**
**MAUREEN BRESNAHAN**
**MELISSA TAPIA**

By: /s/ Cynthia H. Hyndman
    One of their attorneys

Cynthia Hyndman
C. Philip Curley
ROBINSON CURLEY P.C.
300 South Wacker Drive, Suite 1700
Chicago, IL 60606
312.663.3100
chyndman@robinsoncurley.com
pcurley@robinsoncurley.com

Marni Willenson
WILLENSON LAW, LLC
3420 West Armitage, Suite 200
Chicago, IL 60647
312.508.5380
marni@willensonlaw.com